## PEOPLE v STAFFORD

Docket No. 83317. Argued May 2, 1989 (Calendar No. 6). Decided
January 22, 1990.

Susan Stafford was charged with open murder arising from the
stabbing death of her boyfriend. The 52-3 District Court, James
P. Sheehy, J., bound the defendant over for trial for involun-
tary manslaughter only, noting lack of evidence of premedita-
tion and the existence of facts indicating that she had acted in
self-defense and without malice. The Oakland Circuit Court,
Frederick C. Ziem, J., remanded the case to the district court
for further proceedings. After further testimony and argument,
the district court, without explicitly finding new facts or re-
treating from the findings at the initial examination, bound the
defendant over for second-degree murder, citing *People v Oster,*
67 Mich App 490 (1976). Thereafter, the defendant was con-
victed by a jury of involuntary manslaughter. The Court of
Appeals, MICHAEL J. KELLY, P.J., and BEASLEY and P. EDWARDS,
JJ., reversed, holding that the magistrate erred in binding the
defendant over for second-degree murder (Docket No. 91298).
The people appeal.

In an opinion by Justice BRICKLEY, joined by Justices LEVIN,
CAVANAGH, and ARCHER, the Supreme Court *held:*

The Court of Appeals did not clearly err in reversing the
magistrate's binding over of the defendant for second-degree
murder.

1. A magistrate must examine the entire record in arriving
at a decision regarding probable cause. The scope of the magis-
trate's inquiry is not limited to whether the prosecution has
presented evidence regarding each element of the offense. The
magistrate is required to make a determination after an exami-
nation of the whole matter. Although the prosecution has
presented some evidence on each element, if upon an examina-
tion of the whole matter the evidence is insufficient to satisfy
the magistrate that the offense charged has been committed
and that there is probable cause to believe that the defendant
committed it, then the magistrate should not bind the defen-
dant over for the offense charged, but may bind over on a lesser
offense.

2. In this case, the magistrate did review the entire record in

reaching his initial decision to bind over the defendant and found insufficient reason to believe that the offense of first- or second-degree murder had been committed because, on the basis of the evidence presented, malice and premeditation were lacking. Rather, he found that the offense of manslaughter had been committed and that there was probable cause to believe that the defendant had committed it. On remand, however, the magistrate felt constrained by *People v Oster* to change that decision. The Court of Appeals found that in doing so the magistrate impermissibly failed to exercise his discretion. Although the magistrate's reasons for reversing his initial determination might arguably support differing interpretations, the reading of the Court of Appeals is not without support in the record, and therefore not clearly error.

Affirmed.

Chief Justice RILEY, joined by Justices BOYLE and GRIFFIN, dissenting, stated that the circuit court had authority to remand the case to the district court and did not abuse its discretion in so doing. In overturning the magistrate's decision, the Court of Appeals usurped a legitimate exercise of discretion by the magistrate and substituted its own judgment. Although the magistrate relied upon *People v Oster,* 67 Mich App 490 (1976), for legal guidance, he did not rely on it solely in making his decision, but also considered the unique facts of the case and reviewed the whole matter in assessing the additional evidence which supported a bindover for second-degree murder. The decision of the Court of Appeals should be reversed and the conviction for involuntary manslaughter reinstated.

168 Mich App 247; 423 NW2d 634 (1988) affirmed.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Faintuck, Shwedel & Wolfram* (by *William G. Wolfram*) for the defendant.

BRICKLEY, J. The issue before the Court involves whether the examining magistrate in this case erred in binding over the defendant, Susan Stafford, for second-degree murder. The Court of Ap-

peals held that the magistrate abdicated, and
therefore abused, his discretion in the manner in
which he relied on *People v Oster,* 67 Mich App
490; 241 NW2d 260 (1976), to bind the defendant
over for second-degree murder at a remanded
preliminary examination. We conclude that the
Court of Appeals did not clearly err, and affirm
that Court's decision.

I

The prosecutor charged defendant with open
murder for the stabbing death of her boyfriend,
Jeffrey Huff, on July 16, 1985. The facts developed
at the preliminary hearing and at trial revealed
that defendant and Huff met in West Virginia in
either September or October 1984. Huff relocated
to Michigan the following month, and he and
defendant became live-in companions in Oxford,
Michigan, soon afterwards. Defendant testified
that she and Huff lived together fairly happily for
the first three months of 1985. However, beginning
in March 1985, and ending with Huff's death on
July 16, defendant testified that numerous inci-
dents of violent abuse occurred where Huff physi-
cally threatened, slapped, choked and battered
her.

A number of attacks preceded the stabbing on
July 16. On July 12, defendant testified that Huff
attacked her while out horseback riding, threaten-
ing to kill her and nearly causing her horse to go
out of control. Defendant called the police and
they advised her to remove from her residence
guns she had purchased earlier as a gift for Huff.
Huff hid nearby until the police departed.

Two days later, on July 14, while driving in an
automobile, Huff and defendant argued over the
removal of the guns, and Huff subsequently

pushed defendant from the moving automobile. The violence escalated at defendant's residence when defendant's teenage daughter, Murphy, intervened. Huff and Murphy struggled, and Huff slammed the girl's face against the ground. Murphy suffered broken teeth and lacerations of the mouth which required stitches at a hospital. The police again responded to this incident, but did not arrest Huff.

Defendant and Huff sought counseling from an alcohol and drug abuse counselor on July 16. Later that evening, Huff took defendant's car to buy food for that evening's meal. Defendant testified she began to worry when Huff failed to return after some period of time. She testified that she and her daughter had decided to leave the residence to prevent further abuse of her daughter once Huff returned with her automobile.

Eventually Huff, smelling of alcohol, returned accompanied by a male friend, Mills, in Mills' car. Defendant testified that while she spoke on the telephone, Huff entered and began attacking her. As a subterfuge, defendant casually told Huff she needed to get a cigarette, but instead ran to a female neighbor's house nearby. Upon arrival, defendant urgently asked the neighbor, Farden, to telephone the police for assistance. Defendant then telephoned her residence to check on her daughter but, upon receiving no answer, returned in haste with Farden to her home. On her way out, defendant grabbed a large butcher knife from Farden's kitchen, and Farden retrieved a baseball bat and collared her German shepherd dog.

Once at defendant's residence, defendant asked Farden to call for her daughter Murphy to come out of the house. Murphy came outside, followed shortly afterward by Huff. Defendant and Huff

exchanged angry words in the dark night and an altercation ensued in which Huff initially attacked both Farden and defendant. At some point during the struggle, the knife held by defendant penetrated Huff's chest. He walked a few steps and fell, dying at the scene. Defendant followed him, and seeing blood on the knife exclaimed numerous times, "Oh my God, I've stabbed him." The police arrived just minutes later and arrested defendant for murder.

II

At the conclusion of the initial preliminary examination, the magistrate declined to bind the defendant over for either first- or second-degree murder. The magistrate explicitly noted a lack of evidence of premeditation on the defendant's part and the existence of facts indicating that she acted in self-defense and without malice, including testimony that she had sought police protection in the past, had called the police just prior to the stabbing, and that the victim had initiated the fatal altercation. The magistrate nevertheless concluded that the defendant's conduct in stabbing decedent with a knife evidenced probable cause of a reckless indifference for life supporting a binding over for manslaughter. Consequently, the magistrate bound the defendant over for trial on the charge of involuntary manslaughter only.

Before trial, the prosecution moved to remand the case to the examining magistrate to present additional evidence on probable cause of second-degree murder. Specifically, the prosecution desired to present testimony of the medical examiner and to introduce into evidence the knife wielded

by defendant on the night of the homicide.[1] The trial court granted this motion over the objection of defense counsel, and remanded the case for further preliminary proceedings.

The medical examiner alone testified on remand before the magistrate. He speculated that the knife wound inflicted on the decedent indicated a "hook type" thrust. He also opined that the defendant would necessarily have been aware of impaling and withdrawing the knife. His testimony contradicted the defendant's testimony that only after decedent fell did she realize she had stabbed him. Additionally, the prosecution introduced the homicide weapon into evidence.

In its closing argument, the prosecution for the first time cited the case of *People v Oster, supra,* and contended that *Oster* required the magistrate to bind the defendant over for second-degree murder. At the conclusion of the examination, the magistrate reversed his initial decision and bound the defendant over for second-degree murder as requested by the prosecution.

The magistrate, although he referred to "new evidence," did not explicitly find any new facts or retreat from his findings at the initial examination. However, the magistrate asserted that "[i]t was never the intention of the Court to analyze the evidence of the testimony of the witnesses to weigh the evidence to such an extent as to prepare or give a defense for the defendant." Nonetheless, the magistrate reiterated his initial findings of

---

[1] The medical examiner did not testify at the initial preliminary examination because the parties stipulated that the knife wound was the cause of death. The medical examiner had not completed his autopsy report at the time of the initial preliminary examination. MCL 766.4; MSA 28.922 entitles a person charged with a crime to a preliminary examination within twelve days of arraignment. Although the violation of the twelve-day rule constitutes a reversible error at trial, *People v Weston,* 413 Mich 371, 376; 319 NW2d 537 (1982), the prosecution may obtain a continuance for good cause.

strong evidence indicating self-defense: "reviewing all the evidence, it seems clear that in the mind of the defendant that her daughter was in danger [although] . . . the daughter was not in as much danger as maybe the defendant thought she was. However, that does not take away from the fact that the Court finds that the defendant was of a mind that her daughter was still in trouble."

The magistrate focused on *People v Oster* in his concluding and dispositive remarks:

> The Court has had an opportunity to read People versus Oster *as been* [*sic*] *presented by the prosecutor.* And the Court will read the one paragraph that I find is interesting or pertinent or guiding in this case. On Page 496, "The evidence presented at the examination showed the defendant stabbed Goodman with the knife and that Goodman died as a result. This clearly is sufficient to bind the defendant over on second-degree murder charge, as the malice necessary for the charge may be presumed from the use of a deadly weapon which perpetrated the killing." Later on in that opinion, the Court of Appeals refers to those paragraphs as guidelines and the Court will use this as a guideline in this case as to the obligations of an examining magistrate.
>
> While the Court could very easily take the information or the evidence presented and weigh as to the—as between the degrees of the homicide, it's not the duty of the Court to, from all of the evidence presented, to stand in the shoes of the trier of fact, and I follow that and try to follow that. *In this case, if the* People v Oster *says that that's the sufficient amount to bind over the defendant on second-degree murder, then I think that the argument must continue with the trier of fact as to what the meaning of the fight was and whether the defendant was in such heat that—to reduce this to manslaughter* and that's something for the trier of fact to find.
>
> The Court's satisfied by the addition of the

information, witnesses, that the minimum amount of evidence has been presented to support the bindover on second-degree murder in this case, that being set out in the paragraph that I just read to you out of *People v Oster*. I do specifically find, though, that there was no premeditation, and no malice aforethought to support first degree murder, and based upon [sic] that I will not bind over on open murder charge. The rest of the degrees is left for the trier of fact, from the evidence, and their [sic] interpretation of what the evidence was. [Emphasis supplied.]

The magistrate consequently bound the defendant over for second-degree murder. A jury convicted Stafford of involuntary manslaughter, and she appealed. The Court of Appeals reversed the conviction,[2] holding that the magistrate erred in binding the defendant over for second-degree murder. The Court of Appeals also held that the trial court's remand for the presentation of new evidence violated the defendant's right to due process of law. We affirm only as to the former issue and therefore find it unnecessary to address the latter issue whether the remand was erroneous.[3]

[2] We held in *People v Vail*, 393 Mich 460, 464; 227 NW2d 535 (1975), that a conviction of a charge unwarranted by the proofs requires reversal "because a defendant's chances of acquittal on any valid charge is substantially decreased by the possibility of a compromise verdict."

[3] The dissent suggests we should address the remand issue because "if the remand was improper, the discretion issue would have been rendered moot." Of course the reverse is also true since our decision on the discretion issue renders the remand issue moot. Also having accorded the appellant the relief she sought by the resolution of the discretion issue, we follow the well-established rule of avoiding a constitutional question when the case can be resolved on a nonconstitutional basis. It is also a well-recognized operating principle of appellate jurisprudence that we do not decide issues that are not necessary for the disposition of the case or controversy before us. The dissent also suggests that this Court should apply a harmless error analysis to the abuse of the magistrate's decision because defendant never claimed insufficient evidence existed for her bindover on second-degree murder or her involuntary manslaughter conviction.

III

In *People v King,* 412 Mich 145, 153-155; 312
NW2d 629 (1981), this Court delineated the scope
of the magistrate's function at a preliminary ex-
amination. We held in *King* that a magistrate
must examine the entire record in arriving at a
decision regarding probable cause. We said there
that the scope of the magistrate's inquiry

> is not limited to whether the prosecution has
> presented evidence on each element of the offense.
> The magistrate is required to make his determina-
> tion "after an examination of the whole matter."
> Although the prosecution has presented some evi-
> dence on each element, if upon an examination of
> the whole matter the evidence is insufficient to
> satisfy the magistrate that the offense charged has
> been committed and that there is probable cause
> to believe that the defendant committed it, then
> he should not bind the defendant over on the
> offense charged but may bind him over on a lesser
> offense as to which he is so satisfied. [412 Mich
> 154.]

The Court of Appeals holding in the instant case
that the magistrate abdicated his discretion by
relying too literally or narrowly on *People v Oster,
supra,* accords with our decision in *King.*

A review of the initial preliminary examination
indicates that the magistrate did review the entire
record before him in reaching his initial decision
to bind over the defendant, and, just as in *King,
supra,* pp 154-155,

found insufficient reason to believe that the offense

---

We note in response that defendant did challenge the sufficiency
of the evidence at her preliminary examination and at trial on a
motion for directed verdict. Moreover, the prosecution did not make
an argument that defendant failed to challenge the sufficiency of the
evidence in this Court or in the Court of Appeals. And, of course, we
granted leave on the issue of the sufficiency of the evidence.

of first- or second-degree murder had been committed because, based on the evidence presented, malice and premeditation were lacking. He found that the offense of manslaughter had been committed and probable cause to believe that the defendant had committed it.

On remand, however, the magistrate felt constrained by *Oster* to change that decision. By doing so, the Court of Appeals found that the magistrate impermissibly failed to exercise his discretion.

The uncontradicted testimony in this case indicated that the victim attacked defendant and her neighbor and that during the ensuing fray defendant stabbed the victim. At the initial examination, the magistrate noted that the evidence did not indicate a plan to kill on defendant's part and concluded that, given the decedent's history of domestic abuse, the defendant had reasonable grounds to fear for the safety of her daughter and herself.

On remand, the magistrate's stated findings of fact did not differ in any significant respect, but he relied this time on *Oster* as "pertinent or guiding" in a way that negated his previous findings. The Court of Appeals concluded that this reliance on *Oster* constituted an abdication of discretion rising to abuse of discretion. We find no clear error by the Court of Appeals in so holding.[4]

The *Oster* case is factually distinguishable. *Oster* involved a fight between two men at a party, in which the defendant pulled out a knife, leapt down a stairway, and stabbed the victim several times. In contrast, this case involved a single stabbing by a physically smaller woman of a man who had

---

[4] See *People v McIntosh*, 62 Mich App 422, 446-448; 234 NW2d 157 (1975), modified on other grounds 400 Mich 1; 252 NW2d 779 (1977), where the Court held that the failure to exercise discretion when called on to do so constitutes an abdication and hence an abuse of discretion.

exhibited violent behavior in the household numerous times in the past. Three other witnesses confirmed that defendant had called the police before she armed herself and went back to attempt to protect her daughter, that she said she "wasn't gonna to let him hurt them again," and that after the victim fell she exclaimed, "Oh my God, I've stabbed him."

Moreover, the legal principles articulated in *Oster* did not control this case. The *Oster* Court held that evidence showing that the defendant fatally stabbed the victim "clearly is sufficient to bind over defendant on a second-degree murder charge, as the malice necessary for that charge may be presumed from the use of a deadly weapon to perpetrate the killing." 67 Mich App 496. While this remains an accurate statement, *Oster* does not suggest that all other evidence should be disregarded just because of the use of a deadly weapon. The magistrate seemed to use the right standard in finding insufficient probable cause on premeditation and malice at the initial examination, but then on remand apparently disregarded his obligation to perform an "examination of the whole matter" because of one sentence in *Oster*. The Court of Appeals in the instant case held that the magistrate read too much into *Oster* and too little into the scope of the examining function as outlined in *King*. Although the magistrate's reasons for reversing his initial determination might arguably support differing interpretations, the reading of the Court of Appeals is not without support in the record.[5] We therefore decline to overturn its interpretation as clear error.

We affirm the decision of the Court of Appeals

[5] The dissent appropriately observes that "when the magistrate's reasoning is subject to differing interpretations, and one of those interpretations constitutes a proper use of discretion," it is wrong to not follow the interpretation that supports the magistrate. However,

and remand for proceedings consistent with this opinion.

LEVIN, CAVANAGH, and ARCHER, JJ., concurred with BRICKLEY, J.

RILEY, C.J. (*dissenting*). I respectfully dissent from the majority opinion.

Two issues are presented by this appeal. The first issue is whether the circuit court erred in remanding the case to the magistrate. The second issue is whether the magistrate abandoned his discretion in binding defendant over on second-degree murder charges after the second preliminary examination. The majority fails to address the first issue and focuses solely on the second.

I believe that the majority should have first decided whether the circuit court's remand was proper because, if the remand was improper, the discretion issue would have been rendered moot. Therefore, I write separately to indicate that while I can concur in the conclusion implicit in the majority opinion that the remand was proper, I cannot agree with the ultimate conclusion reached by the majority that the magistrate abandoned his discretion by relying solely on *People v Oster,* 67 Mich App 490; 241 NW2d 260 (1976).

I

The first issue presented on appeal is whether the circuit court properly remanded the case to the magistrate to hear additional evidence. I find

our observation that the magistrate's reasons *might* support a different interpretation does not in our judgment result in clear, legal error when the Court of Appeals did not find a different interpretation that would support the magistrate's findings.

that the circuit court had authority to remand to
the district court, and did not abuse its discretion
in so ordering. I agree with the majority's implicit
finding and would reverse the judgment of the
Court of Appeals.

This Court has long recognized the authority of
the circuit court to remand once it has jurisdiction
of a criminal case.[1] In *People v Miklovich,* 375
Mich 536; 134 NW2d 720 (1965), the circuit court
found insufficient evidence for a bindover, quashed
the information, and remanded the case to the
magistrate. The defendant argued that once the
motion to quash was granted, the circuit court was
without jurisdiction to remand the cause. The
Court stated:

> Jurisdiction, having once vested in the circuit
> court, was not lost by virtue of the granting of the
> motion to quash the information. Therefore, the
> circuit court had authority, upon motion of the
> prosecutor, to remand to the examining magistrate
> for further examination. [375 Mich 539.]

See also *People v Kennedy,* 384 Mich 339; 183
NW2d 297 (1971), and *Genesee Prosecutor v Gene-
see Circuit Judge,* 391 Mich 115; 215 NW2d 145
(1974).

In *People v New,* 427 Mich 482; 398 NW2d 358
(1986), this Court again recognized the option of a
circuit court judge to remand when there is an

[1] The circuit court acquires jurisdiction from the district court upon
the filing of a proper return by a magistrate before whom a defendant
has been examined or waived examination, *People v Curtis,* 389 Mich
698; 209 NW2d 243 (1973); *Genesee Prosecutor v Genesee Circuit
Judge,* 391 Mich 115; 215 NW2d 145 (1974); *People v Johnson,* 427
Mich 98; 398 NW2d 219 (1986).

MCL 600.611; MSA 27A.611 provides that "circuit courts have
jurisdiction and power to make any order proper to fully effectuate
the circuit courts' jurisdiction and judgments."

insufficiency of the proofs below.[2] In the instant case, the Court of Appeals misinterpreted *New* as qualifying "the trial court's authority to remand, the condition being that the evidence be insufficient to show the commission of the crime or the defendant's participation in it."[3] However, the *New* Court stated that

> [i]f, the circuit court judge finds the evidence insufficient to show the commission of the crime or defendant's participation in it, he may either dismiss the charges or remand the cause to the examining magistrate for further examination. [*Id.* at 495.]

The language does not limit the court's power to remand, but merely states that the court *may* remand despite insufficient evidence for a bindover.

This Court has also acknowledged the authority of the circuit court to remand when it amends an information to include a new charge on which a defendant did not have a preliminary examination, *People v Bercheny*, 387 Mich 431; 196 NW2d 767 (1972).[4] In *Bercheny*, the Court found that the amendment of the information addressed form rather than substance and that therefore remand or rearraignment was not required.

The authorities set out above acknowledge the power of circuit courts to remand once they have jurisdiction of a criminal case. There is no authority which precludes circuit courts from exercising

---

[2] The opinion in *New*, written by Justice CAVANAGH, states that "[t]he bind-over procedure is structured so as to allow the prosecutor, upon remand by the circuit court, to attempt to remedy any insufficiency in the proof in order to establish the requisite probable cause." 427 Mich 495.

[3] *People v Stafford*, 168 Mich App 247, 252; 423 NW2d 634 (1988).

[4] The Court adopted the opinion in *People v Iaconis*, 29 Mich App 443; 185 NW2d 609 (1971).

the remand alternative. Although *Miklovich* authorizes remands where the evidence at the preliminary hearing is insufficient to bind over, it does not limit remands to such situations. *Miklovich* hinges on the reasoning that the remand was proper because the circuit court had jurisdiction. In the instant case, the trial court had jurisdiction once the magistrate filed the return on July 29, 1985. Once jurisdiction was vested in the circuit court, it had the power to issue the remand order so as to "fully effectuate [its] jurisdiction . . . ." MCL 600.611; MSA 27A.611.

The efficient administration of the criminal justice process strongly supports the power of a circuit court to remand in a situation presented by the instant case. The prosecution moved to remand because additional evidence arose after the first preliminary examination.[5] The prosecution was not questioning the magistrate's ruling, therefore an appeal was not an option. If the court was precluded from remanding, its only options would consist of dismissal or trying defendant on a potentially inaccurate charge. Although dismissal and refiling are certainly allowable, this would lend unnecessary complication and inefficiency to pretrial proceedings.

Having found that trial courts have authority to remand, I face the question whether the circuit court abused its discretion in remanding to the magistrate to hear additional evidence.

In order to find that a trial court abused its discretion, I would have to find that the trial judge breached the standards set out in *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959):

---

[5] The evidence was the testimony of the medical examiner concerning the autopsy report. The magistrate inquired about the findings in the autopsy report at the end of the first preliminary examination, but the report was unavailable at that time.

Where, as here, the exercise of discretion turns upon a factual determination made by the trier of the facts, an abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias.

However, in *People v Charles O Williams,* 386 Mich 565, 573; 194 NW2d 337 (1972), the Court stated that "a somewhat stricter standard should be observed in criminal cases where loss of freedom by incarceration is often the penalty that a convicted defendant will suffer."

I find that the circuit court was well within its discretion in remanding the case to the district court. Although the Supreme Court has not expressly placed limitations on remands in this situation, the court rules have recently restricted successive examinations in the following manner. MCR 6.110(F)[6] provides:

Discharge of Defendant. If, after considering the evidence, the court determines that probable cause does not exist to believe either that an offense has been committed or that the defendant committed it, the court must discharge the defendant without prejudice to the prosecutor initiating a subsequent prosecution for the same offense. Except as provided in MCR 8.111(C), the *subsequent preliminary examination must be held before the same judicial officer and the prosecutor must present additional evidence to support the charge.* [Emphasis added.]

[6] MCR 6.110(F) became effective October 1, 1989.

This rule insures fairness to those under investigation who are successively examined for the same offense. In the instant case, the motion to remand had the same effect as a refiling by the prosecution. At the first preliminary examination the magistrate found insufficient probable cause on the murder charge and bound defendant over for involuntary manslaughter. The prosecution moved to remand so that defendant could be examined again on the murder charge. The effect was the same as if the magistrate had dismissed the case for lack of probable cause on the murder charge and the prosecutor had refiled. Thus, the limitations on refiling found in MCR 6.110(F) should guide the Court in evaluating the trial judge's exercise of discretion in granting the motion to remand.

The prosecution moved to remand to offer additional evidence which was unavailable at the earlier examination. The additional evidence addressed the element of malice which the magistrate found lacking at the first preliminary hearing. Defendant and the Court of Appeals admit that additional evidence was presented. Furthermore, the same magistrate that made the initial determination presided over the second hearing. There is no evidence that the prosecution's motion to remand was made in bad faith or was made for the purpose of harassing defendant. I find that the circuit court's actions comport with the limitations on refiling set forth in MCR 6.110(F) and do not constitute an abuse of discretion. I would reverse the decision of the Court of Appeals.

II

The next issue to address is whether the magistrate wrongly bound defendant over on a charge of

second-degree murder after the second preliminary examination. I dissent from the majority which found that the bindover was improper because the magistrate failed to examine the whole matter by relying solely on *People v Oster, supra,* in making his decision.[7]

### A. EXAMINATION OF THE WHOLE MATTER

As this Court stated in *People v King,* 412 Mich 145, 154; 312 NW2d 629 (1981), a magistrate's decision as to probable cause must be arrived at "after an examination of the whole matter." The majority position is that the magistrate properly examined the whole matter at the first preliminary hearing, but failed to examine the whole matter at the second preliminary hearing. I disagree.

At the second preliminary examination, new evidence on the element of malice was presented. The medical examiner testified that the "knife wound inflicted on the decedent indicated a 'hook type' thrust. [The medical examiner] also opined that the defendant would necessarily have been aware of impaling and withdrawing the knife." *Ante,* p 130. This additional evidence spoke to the nature of the knife wound and reflected on the mental state of defendant. From this testimony, the magistrate could infer malice.

The autopsy report and examiner's testimony were not available for the first hearing. However, at the end of the first hearing, the magistrate inquired about the findings in the autopsy report.

[7] While I dissent to respond to the majority opinion and Court of Appeals decision, I think that a harmless error analysis would have been an effective way of disposing of the issues in this case. On appeal, defendant does not claim that there was insufficient evidence for a bindover on second-degree murder, nor does she claim that she was convicted of involuntary manslaughter on insufficient evidence.

Presumably, he inquired because he thought the
report would be material to his determination.
Given the relevance of the autopsy report to the
incident, and its absence in the first hearing, the
first hearing fell short of being an examination of
all relevant information. The admission of the
testimony at the second hearing facilitated a com-
plete examination of the matter and supported the
bindover for second-degree murder.

The magistrate's opinion is indicative of his
thorough examination at the second preliminary
hearing. He makes detailed findings of fact with
regard to the whole incident. Furthermore, in
arriving at his decision, the magistrate refers to
"additional" and "new evidence." Viewing the en-
tire opinion, it is clear that the magistrate consid-
ered and understood all of the relevant facts in
making his decision. In my view, he made a suffi-
cient examination of the entire matter.

### B. ABANDONMENT OF DISCRETION

The majority holds that the magistrate aban-
doned his discretion in binding defendant over for
second-degree murder. Again, I disagree.

I believe that the magistrate properly exercised
his discretion in this case. Judging by the different
outcomes of the two hearings, the magistrate had
difficulty in deciding whether the evidence war-
ranted a bindover for second-degree murder. This
is understandable. The facts do not dictate a deci-
sion one way or another. It is undisputed that
defendant stabbed and killed her boyfriend. What
is disputed is whether the stabbing was accidental
or intentional, and, if intentional, whether the
killing was excusable.

In factually close cases, it is the hallmark of a
magistrate that he exercise his discretion in deter-

mining whether probable cause exists to support a bindover, and that his findings not be interfered with by a reviewing court unless there is a "clear abuse of discretion." *People v Doss,* 406 Mich 90, 101; 276 NW2d 9 (1979).

In *People v Dellabonda,* 265 Mich 486, 491; 251 NW 594 (1933), cited in *People v Doss, supra* at 101, the Court stated:

> Primarily the question of probable cause is for the consideration of and determination by the examining magistrate. *This court may not agree with the findings of such magistrate but it has no right to substitute its judgment for his except in case of a clear abuse of discretion.* [Emphasis added.]

By overturning the magistrate's decision in the instant case, the Court of Appeals engaged in fact finding and substituted its judgment for that of the magistrate. The majority states that "[a]lthough the magistrate's reasons for reversing his initial determination *might arguably support differing interpretations,* the reading of the Court of Appeals is not without support in the record." *Ante,* p 135 (emphasis added). I believe the majority is wrong to affirm the decision of the Court of Appeals when the magistrate's reasoning is subject to differing interpretations, and one of those interpretations constitutes a proper use of discretion. The Court of Appeals clearly erred because the magistrate's decision was properly supported by at least one construction of his reasoning. It is an entirely reasonable construction of the magistrate's opinion that he examined the whole matter, including the additional evidence, in binding defendant over for second-degree murder. By choosing another interpretation over a reasonable one supporting the magistrate's findings, I believe that the Court of

Appeals substituted its judgment for that of the magistrate. Deference should have been given the magistrate's decision absent a clear abuse of discretion.

In my opinion, the magistrate did not rely solely on *Oster* in making his decision. Though he used *Oster* for legal guidance, he also considered the unique facts of this case, and the record amply supports the conclusion that he reviewed the whole matter in assessing the additional evidence which supported a bindover for second-degree murder. Essentially, the Court of Appeals usurped a legitimate exercise of discretion by the magistrate, and substituted its own judgment.

I would reverse the judgment of the Court of Appeals and reinstate the involuntary manslaughter conviction.

BOYLE and GRIFFIN, JJ., concurred with RILEY, C.J.